(No. 10913.—Reversed and remanded.)

CHARLES W. FLACK et al. Defendants in Error, vs. JOHN S. WARNER et al. Plaintiffs in Error.

*Opinion filed April 19, 1917—Rehearing denied June 6, 1917.*

1. CONTRACTS—*when a contract between attorney and client is contrary to public policy.* A contract between an attorney and his client by which the attorney undertakes to render legal services in controlling or advising with an owner of property to prevent her from disposing of her property in such manner as to disinherit the client and to secure to him certain rights and interests in her property before her death is contrary to public policy.

2. SAME—*courts will not aid either party to an illegal contract.* Where a transaction is tainted with fraud as between the parties to it the courts will not assist either but will leave them in the position in which it finds them.

3. PARTITION—*party who acquires interest in property by illegal contract cannot base bill for partition thereon.* An attorney who has contracted to render services to control the disposition of property by the owner thereof for the benefit of certain relatives in consideration of his receiving a portion of the property, and has carried out his agreement by inducing the property owner to sign a trust deed disposing of the property in accordance with the desires of the relatives, cannot rely upon the contract as showing his right to partition of the property.

WRIT OF ERROR to the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding.

MILLARD R. POWERS, (JAMES L. CLARK, of counsel,) for plaintiffs in error.

CHIPERFIELD & CHIPERFIELD, C. G. GUMBART, and E. D. GRIGSBY, (CHARLES W. FLACK, and JOHN C. LAWYER, of counsel,) for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill in chancery filed by defendants in error October 29, 1915, in the circuit court of McDonough county, asking for the partition of certain real estate in

said county and the distribution of certain specified personal property. Several of the plaintiffs in error answered, denying that defendants in error were entitled to any part of the relief prayed for, and one of them also filed a cross-bill. Other persons not parties to this writ of error asked leave to file an intervening petition, which was denied. After a hearing before a master in chancery and report by him, a decree was entered in favor of defendants in error granting the relief prayed for. From that decree this writ of error was sued out.

Jonas R. Harris, a farmer residing in said county, died in 1910, intestate, leaving his widow, Mary M. Harris, but no children or descendants of children. The widow, Mary M. Harris, received from his estate approximately $100,-000, partly in real estate and partly in personal property. Shortly after his death she made a will providing for the disposition of her property, making several bequests in favor of certain intimate personal friends who were not relatives but leaving most of her property to some of her brothers and sisters, nephews and nieces. About this time certain of her relatives went to defendants in error, who are attorneys and co-partners, to consult with reference to the property of Mrs. Harris and ascertain what means they should take to obtain a share for themselves. As the result of this conference, John S. Warner, a brother of Mrs. Harris, for himself and for John Warner, a nephew of Mrs. Harris, entered into a written contract with defendants in error whereby the latter engaged to render all legal services necessary or that might be required in controlling or advising with Mrs. Harris, or in prosecuting any suit or suits for the appointment of a conservator for Mrs. Harris, or the setting aside of her will or any other legal document, or prosecuting any legal proceeding that might be necessary to secure the rights and interests of said John S. Warner and John Warner in and to Mrs. Harris' property, whether such proceeding might be taken before or

278 — 24

after her death, the compensation of defendants in error to be one-third of whatever might be thus obtained from the estate of Mrs. Harris for said John S. Warner and John Warner. Thereafter, at various times, a sister, Mrs. Eliza Davis, another brother, Ralph Warner, and various nieces and nephews, Florence Sleeter, A. Warner, Henry Warner and Jacob Warner, signed similar contracts with defendants in error, except that the interest assigned by each of the last named parties was one-fifth instead of one-third. The first one of these contracts was dated November 19, 1910. The last one was dated November 22, 1910, though Jacob Warner's, while dated November 22, appeared to have been actually signed by him two or three weeks later.

On November 25, 1910, Mrs. Harris, through the persuasion and advice of the defendants in error and others, signed a deed of trust conveying to James C. Hammond all her property, to hold in trust for her benefit during her lifetime and after her death for the use of John S. Warner and other brothers and sisters and of certain nephews and nieces and two persons not related to her. On August 22, 1912, John S. Warner and his wife by warranty deed conveyed all interest in the real estate described in said deed of trust to defendants in error. Said Warner and his wife also on the same day transferred and assigned to said defendants in error by another document all their right, title and interest in and to all the real and personal property, of every kind and nature, that they might acquire or become entitled to under said deed of trust or which said John S. Warner might inherit from Mary M. Harris. John S. Warner died prior to the death of Mrs. Harris, leaving him surviving his widow, Mary C. Warner, and two sons, Charles H. Warner and John C. Warner, all three of whom thereafter asked leave to file an intervening petition in this cause for the purpose of defending their interests in said property claimed by defendants in error and were refused by the trial court the right so to do.

On November 21, 1910, John S. Warner, Ralph Warner and John M. Davis signed a petition to the county court of McDonough county, alleging that Mary M. Harris was a distracted and feeble-minded person, who by reason of her unsoundness of mind was incapable of managing and caring for her estate, and praying that James C. Hammond, or some other fit person, be appointed her conservator. It appears that the defendants in error were the attorneys who prepared this petition and filed the same in the county court. Immediately after notice had been served on her of the filing of this petition Mrs. Harris consulted with defendant in error Flack to see if the contract she had already made with James C. Hammond with reference to the care and management of the property would not be satisfactory to her relatives. Attorney Flack told her, after seeing the contract, that he did not think it would be satisfactory but that he thought he could prepare a document that would be. With the assistance of attorney George D. Tunnicliff Flack prepared the deed of trust here in question and they presented it to Mrs. Harris for her approval. She objected to certain parts, and other conditions were added. After these changes were made the evidence shows that she with reluctance signed and acknowledged the deed of trust and it was delivered to the trustee, James C. Hammond. On February 4, 1911, Mrs. Harris served notice on Hammond that she had canceled and forever terminated said deed of trust and his power to act thereunder. On August 30, 1911, she executed a paper wherein she stated that she ratified in full the authority granted to said trustee under said deed of trust and annulled the cancellation instrument of February 4, 1911. The said deed of trust provided for the management of her property by the trustee during her lifetime, the income to be used for her care and the payment of taxes and for certain other objects, and upon her death the specified *cestuis que trust* were to become entitled to the property in certain stated proportions or amounts. Most of

the *cestuis* were the same persons as were named as lega-
tees under her will and codicil, but the amounts received
by several of them under said deed of trust differed from
the amounts left them under the will and codicil. Lizzie
L. Gibson, Jesse Matheny and the children of Alfred War-
ner and Jacob Warner, who are among the parties suing
out this writ of error, would each receive more under the
will and codicil than under the deed of trust, and, as we
understand the record, the children of Eliza Davis, who
has died since she entered into the contract with defend-
ants in error, would also receive more under the will than
under the deed of trust.

The decree in this case finds the deed of trust from
Mrs. Harris to James C. Hammond was a valid and bind-
ing instrument and was not obtained by duress, undue
influence or fraudulent representations, as charged in the
answer of plaintiffs in error. It further found that under
said deed of trust John S. Warner became a beneficiary to
the extent of an undivided one-seventh in said trust estate
in both real and personal property, and that his interest in
said real estate had been conveyed by him and his wife by
warranty deed to defendants in error, and that all his other
interests under said deed of trust in the real or personal
property had been assigned and transferred by him and his
wife to said defendants in error; that upon the death of
said Mary M. Harris the beneficial interest created by said
deed of trust for John S. Warner vested, under the Statute
of Uses, in defendants in error; that plaintiff in error Ja-
cob Warner, who filed the cross-bill herein, became entitled
to one forty-ninth interest in the property conveyed by said
deed of trust, but that said interest was subject to the con-
tract he executed with defendants in error, which provided
that they should be entitled to one-fifth of all his interest
derived under said deed of trust. The decree further found
that Ralph Warner obtained an undivided one-seventh part
in the property of Mrs. Harris under said deed of trust;

that Alice Harris, Delphine Warner Baker, Mary War-
ner, Harold Warner and Carl Warner each received a one
thirty-fifth part in Mrs. Harris' property and John War-
ner an undivided one-seventh part; that Jeanette Warner
Simpson received an undivided one twenty-first part and
Lizzie Gibson an undivided two twenty-firsts part; that
Arthur Warner, Jacob Warner, Henry Warner, Sherman
Warner, Florence Sleeter, Anna Bryan and Adella Smith
each received a one forty-ninth part; that Clara Davis
Harris and Thomas M. Davis each received an undivided
one thirty-fifth part in the said property and Meredith G.
Davis an undivided three thirty-fifths part. The decree
further found that the interests of Ralph Warner, Thomas
M. Davis, Clara Davis Harris, Meredith G. Davis, Florence
Sleeter, Henry Warner, Arthur Warner and Jacob Warner
were each subject to the said contracts conveying a one-
fifth part of their respective interests to defendants in er-
ror, Charles W. Flack and John C. Lawyer; and the de-
cree further found that the real estate in question covered
by said deed of trust should be partitioned and divided in
accordance with the interests so found, and that the trustee,
James C. Hammond, should be directed to distribute the
personal property in his possession and custody and held
by him in trust under said deed in accordance with said in-
terests. The decree sets forth the interests of the respec-
tive owners, and finds that the shares and portions of Ralph
Warner, Clara D. Harris, Thomas M. Davis, Meredith G.
Davis, Florence Sleeter, Henry Warner, Arthur Warner
and Jacob Warner are each subject to the said contracts
which convey and assign to defendants in error the un-
divided one-fifth part or portion of the respective shares,
and said interests so conveyed and assigned are decreed to
be vested in said defendants in error.

Plaintiffs in error contend in this court that the deed
of trust was invalid because it was procured through undue
influence and duress from Mrs. Harris. They further con-

tend that defendants in error are estopped from setting up rights under the said deed of trust because they had procured a petition to be filed in the county court of said Mc-Donough county alleging that Mrs. Harris was of unsound mind. The conclusion that we have reached on other questions in this case renders it unnecessary for us to consider or decide these questions.

The contracts by which the defendants in error undertook to render legal services in controlling or advising with Mrs. Harris to prevent her from disposing of her property so as to disinherit John S. Warner or the other relatives who signed such contracts and to secure to them certain rights and interests in her property before her death were all contrary to public policy. Such contracts are necessarily secret and tend to encourage artifices and improper attempts to control the exercise of the free judgment and will of owners of property and their right to dispose of it according to their own judgment. They tend to interfere with the natural rights and interests of third parties, and offer an incentive to exert, for a money consideration, undue and improper influences, and therefore are contrary to sound morality and calculated to be prejudicial to the public welfare. (1 Story's Eq. Jur.—13th ed.—sec. 265; 2 Pomeroy's Eq. Jur.—3d ed.—sec. 931; 12 R. C. L. 231; *Earl of Chesterfield* v. *Janssen,* 18 Eng. Rul. Cas. 289; *Menzies* v. *Menzies,* 24 id. 719, note 765.) The trial court therefore erroneously found that the shares and portions of Ralph Warner, Clara D. Harris, Thomas M. Davis, Meredith G. Davis, Florence Sleeter, Henry Warner, Arthur Warner and Jacob Warner under said deed of trust are each subject to said contracts conveying and assigning to defendants in error the undivided one-fifth part of said respective shares, and erroneously found that said one-fifth interest, under said contracts, was vested in defendants in error.

It has been the settled practice in this State that where a transaction is tainted with fraud as between the parties to it the courts will not assist either but will leave them in the position in which it finds them.   (*Miller* v. *Marckle*, 21 Ill. 151; *Winston* v. *McFarland*, 22 id. 38; *Skeels* v. *Phillips*, 54 id. 309; *Compton* v. *Bunker Hill Bank*, 96 id. 301; *Crichfield* v. *Bermudez Asphalt Paving Co.* 174 id. 466.) This is a chancery proceeding.   "In general, where parties are concerned in illegal agreements or other transactions, whether they are *mala prohibita* or *mala in se,* courts of equity, following the rule of law as to participators in a common crime, will not, at present, interpose to grant any relief."   (*Miller* v. *Marckle, supra,* p. 154.)   "It is a principle of equity that where a contract is illegal, immoral or against public policy, or has been entered into through fraud or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the parties, a *particeps doli,* while the agreement is still executory, either compel its execution or decree its cancellation, nor, after it has been executed, set it aside, and thus restore the plaintiff to the property or other interest which he has fraudulently or illegally transferred.   Equity will leave such parties exactly in the position in which they have placed themselves, refusing all affirmative aid to any of the participants.   This general rule applies not only to the original parties to an illegal, immoral or fraudulent transaction, but to their heirs and to all parties claiming under or by title derived from them, where no equitable rights intervene to protect such parties."   (10 R. C. L. 102.)   As to when and under what circumstances courts of equity will relieve either of the parties to such transactions, see 1 Story's Eq. Jur. secs. 299-305, inclusive, and cases there cited.

It may be remarked in this connection that there were no allegations in the bill, and no proof was presented, that would justify making this proceeding an exception to the

general rule that equity will not take jurisdiction in a case of this kind to give affirmative relief to defendants in error in executing contracts which are against public policy. This is plainly a bill in equity for partition and therefore comes within the general rule just laid down, but whether it were a bill in equity for partition or a proceeding under the statute for partition, under the rules already laid down no relief could be granted to defendants in error.

On this record there can be no question that defendants in error were not induced to enter into these contracts by means of any fraud, duress or undue influence but entered into them voluntarily, and, indeed, were active in promoting their execution, and advised and practically directed the securing of the deed of trust from Mary M. Harris in attempting to carry out such illegal contracts. This being so, as to those defendants in the court below whose interests the bill alleged and decree found were subject to the said contracts providing for paying to defendants in error a certain proportion of the interest recovered under such contracts by their advice and assistance the bill should have been dismissed for want of equity and for lack of jurisdiction of the court to entertain it so far as those interests were concerned.

As this cause must be reversed as to that part of the decree which gives certain interests in the property of Mrs. Harris alleged to have been acquired by defendants in error through said contracts for legal services, it is unnecessary for us to consider or decide the other questions raised in the briefs.

The decree is reversed and the cause is remanded for further proceedings in harmony with the views herein expressed.                    *Reversed and remanded.*