(No. 40734.- )
JAMES CHAPMAN *et al.*, Appellees, *vs.* JOHN C. WATSON, Director of Registration and Education, Appellant.

*Opinion filed September 24, 1968.*

WILLIAM G. CLARK, Attorney General, of Springfield, (JOHN J. O'TOOLE and DONALD J. VEVERKA, Assistant Attorneys General, of counsel,) for appellant.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (JAMES M. WINNING, of counsel,) for appellees.

KATZ & FRIEDMAN, of Chicago, (HAROLD A. KATZ and IRVING M. FRIEDMAN, of counsel,) for amici curiae International Union, United Auto, Aerospace and Agricultural Implement Workers of America et al.

DAWN CLARK NETSCH, F. RAYMOND MARKS, JR., NISSEN N. GROSS, HAROLD D. SHAPIRO, ALAN H. SILBERMAN, and MAYNARD I. WISHNER, all of Chicago, (DAVID C. LONG, of counsel,) for amici curiae American Civil Liberties Union et al.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Sangamon County enjoined John C. Watson, Director of the Department of Registration and Education, from enforcing Rule V of the Department, and he has appealed directly to this court. The case involves

questions arising under the constitutions of the United States and of this State.

Rule V was adopted in July of 1966 upon the recommendation of the examining committee established under an amendment to the Act relating to real-estate brokers and salesmen. (Ill. Rev. Stat. 1965, chap. 114½, par. 3.06.) It provides: "(1) No registrant shall enter into a listing agreement which prohibits the sale or rental of real estate to any person because of race, color, creed, religion or national origin. (2) No registrant shall act or undertake to act as a real estate broker or real estate salesman with respect to any property the disposition of which is prohibited to any person because of race, color, creed, religion or national origin."

The original plaintiffs, James Chapman and Carl Harmes, are licensed real-estate brokers who allege that they "have * * * numerous real estate listing contracts now in effect with owners who refuse to sell or offer to sell and who refuse to permit Plaintiffs to sell or offer to sell their property to persons other than Caucasians." They further allege that Rule V "has and is intended to have the effect of nullifying existing contracts between real estate brokers and salesmen and owners of real estate * * * by virtue of the threat of future revocation or suspension of or refusal to renew certificates of registration * * * and the further effect of the destruction of the agency relationship between Plaintiffs and their owner customers both existing and hereafter acquired." They assert that Rule V violates article III and sections 1 and 2 of article II of the constitution of Illinois, as well as section 1 of the fourteenth amendment to the constitution of the United States, and they charge that it is also contrary to the public policy of the State of Illinois. They allege that they have no adequate remedy at law and that if Rule V is permitted to continue in effect they will be irreparably injured "by the loss of existing and future

listing contracts and by the destruction of the usual and customary agency relationship between Plaintiffs and owners of real estate in Illinois.

Their prayer for relief requests:

"1. That John C. Watson * * * be temporarily and permanently enjoined from revoking, suspending or refusing to renew the certificate of registration of either of the Plaintiffs by reason of his continuing to accept listing contracts and to act as a real estate broker for owners in contravention of the purported rule and from enforcing said rule in any manner or fashion whatsoever.

"2. That the Court determine and declare the right of the Plaintiffs as registrants to enter into listing agreements which prohibit the sale or rental of real estate to any person because of race, color, creed, religion or national origin.

"3. That the Court determine and declare the right of the Plaintiffs as registrants to act or undertake to act as real estate brokers or salesmen with respect to any property the disposition of which is prohibited to any person because of race, color, creed, religion or national origin * * *."

Numerous other real-estate brokers were permitted to intervene as plaintiffs, and thereafter a class action was filed on behalf of all real-estate brokers and salesmen, alleged to number approximately 40,000. The complaint in the class action contained the same allegations and requested the same relief as the original complaint, and the two cases were consolidated in the trial court.

The defendant moved to dismiss the complaints. His motion was overruled and the court entered a decree which found that "Rule V is void and therefore does not prevent Plaintiffs and all real estate brokers and real estate salesmen similarly situated from entering into listing contracts and agreements with owners which prohibit the sale or rental of real estate to any person because of race, color,

creed, religion or national origin * * *," or from "acting, or undertaking to act, as real estate brokers or real estate salesmen with respect to any property the disposition of which is prohibited to any person because of race, color, creed, religion or national origin." The decree permanently enjoined the defendant from enforcing Rule V "in any manner or fashion whatsoever."

The statute which provides for the regulation and registration of real-estate brokers and salesmen makes it unlawful to act as a real-estate broker or salesman without a certificate of registration issued by the Department of Registration and Education; it authorizes the Department to "make and enforce reasonable rules and regulations * * * in connection with the issuance, renewal, revocation, suspension or recall of any certificate", and it authorizes the Department to refuse to issue or renew, or to suspend or revoke a certificate of registration for any of 18 specifically enumerated causes. (Ill. Rev. Stat. 1967, chap. 114½, pars. 1, 3.03, 8.) The subject matter of Rule V is not specifically mentioned in any of the enumerated grounds, and the plaintiffs argue that the General Assembly has not authorized the Department to revoke or suspend a license upon the grounds stated in Rule V, and that the adoption of that rule by the Department is a usurpation of legislative power in violation of article III of the constitution of Illinois. It is also argued that the fourteenth amendment to the constitution of the United States "neither authorizes nor requires a state to guarantee freedom from discrimination by unconstitutional means."

Our recent decision in *Chicago Real Estate Board* v. *City of Chicago,* 36 Ill.2d 530, involved issues similar to some of those sought to be raised by the plaintiffs in the present case. There we sustained the validity of an ordinance of the city of Chicago which made it "unlawful for real-estate brokers to discriminate on account of race, color, religion, national origin or ancestry in the sale, rental or

financing of residential property in the city." (36 Ill.2d at
533.) The ordinance was attacked upon Federal and State
due-process grounds and upon equal-protection grounds
under the fourteenth amendment to the constitution of the
United States. It was also challenged as violative of free-
dom of speech. Our opinion in that case recited the history
of racial discrimination in housing in the city of Chicago
and pointed out the significant role of real-estate brokers
in that history. In rejecting the contention that the ordi-
nance violated the equal-protection clause, the opinion
pointed out that "real-estate brokers engage in far more
transactions of buying, selling, renting and financing of
property and consequently have far more opportunity to
exercise discrimination and affect the housing market than
do individual property owners." (36 Ill.2d at 549.) To the
extent that this and other contentions dealt with in that
case are reiterated in the present case, we find it unnecessary
to discuss them.

The defendant urges that the conduct prohibited by
Rule V falls within the statutory grounds for denial or
revocation of a license (Ill. Rev. Stat. 1967, chap. 114½,
par. 8) because that conduct can be considered to demon-
strate dishonesty, unworthiness or incompetency, or a fail-
ure to safeguard the interest of the public. In this connec-
tion he points out that a pattern of discrimination of the
kind at which Rule V is directed can not be carried out
without misrepresenting to Negroes that no property is
available, when in fact property is available, and without
quoting prohibitively higher prices to Negroes than to
Caucasians in order to prevent a sale. He also argues that
Rule V is authorized by the fourteenth amendment to the
constitution of the United States.

On behalf of the defendant and the *amici curiae* it is
also argued that the relief granted by the trial court con-
stitutes "state action" which itself violates the Federal
constitution. The following statement in *Shelley* v. *Kraemer,*

414

(1948) 334 U.S. 1, 22, 92 L. Ed. 1161, 1185, 68 S. Ct. 836, is relied upon: "The Constitution confers upon no individual the right to demand action by the State which results in the denial of equal protection of the laws to other individuals." On behalf of *amici curiae* it is argued that the State is not only authorized, but indeed is required, to take affirmative action to eliminate discrimination by brokers who are licensed by the State and enjoy what amounts to an exclusive franchise granted by the State. This argument emphasizes that the selling and leasing of real estate is a public function, rather than a private one, and that it is conducted primarily by real-estate brokers. In view of the known pattern of racial discrimination which, as our opinion in the *Chicago Real Estate Board* case pointed out, was participated in and fomented by licensed real-estate brokers, it is argued that the failure of the State to prohibit the kind of conduct at which Rule V is aimed would involve the State itself in the discriminatory pattern. And it is urged that the State therefore has an affirmative duty to prohibit the brokers whom it licenses from participation in discriminatory practices.

In our opinion settled principles of equity jurisdiction require that the plaintiffs' actions be dismissed, and we therefore express no opinion upon the validity of Rule V or the other constitutional issues that have been raised. Those actions rest entirely upon the claim that Rule V illegally interferes with the broker's contracts with their clients. But the unique characteristic of those contracts is that their enforcement is forbidden by the equal -protection clause of the fourteenth amendment. *Shelley* v. *Kraemer,* 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836; *Hurd* v. *Hodge,* 334 U.S. 24, 92 L. Ed. 1187, 68 S. Ct. 847; *Barrows* v. *Jackson,* 346 U.S. 249, 97 L. Ed. 1586, 73 S. Ct. 1031.

It may be conceded, as the plaintiffs argue, that "Plaintiffs here are not seeking the aid of the Court to enforce a discriminatory contract as was the plaintiff in *Shelley* v.

*Kraemer,* 334 U.S. 1; nor are they seeking damages for the breach of a discriminatory contract as was the case in *Barrows* v. *Jackson,* 346 U.S. 249. Plaintiffs here are seeking the protection of the courts against the arbitrary exercise of legislative power by the executive branch of government." But this attempt to distinguish the decisions that have prohibited judicial enforcement of discriminatory contracts disregards the underlying basis of those decisions.

The opinion in *Shelley* v. *Kraemer* emphasized the public policy that forbids enforcement of such agreements: "It cannot be doubted that among the civil rights intended to be protected from discriminatory state action by the Fourteenth Amendment are the rights to acquire, enjoy, own and dispose of property. Equality in the enjoyment of property rights was regarded by the framers of that Amendment as an essential pre-condition to the realization of other basic civil rights and liberties which the Amendment was intended to guarantee." *Shelley* v. *Kraemer,* 334 U.S. at 10, 92 L. Ed. at 1179.

And in a companion case to *Shelley* v. *Kraemer,* the public policy considerations that underlay the Supreme Court's refusal to enforce a discriminatory covenant in the District of Columbia were more distinctly enunciated. In *Hurd* v. *Hodge,* 334 U.S. 24, 34-35, 92 L. Ed. 1187, 1195, the court stated: "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in the Constitution, treaties, federal statutes, and applicable legal precedents. Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."

The principle is one of general application. *Morton Salt Co.* v. *G. S. Suppiger Co.,* (1941) 314 U.S. 488, 86 L. Ed. 363, 62 S. Ct. 402, was an action by the respondent for an injunction and an accounting for infringement of its patent

upon a machine for depositing salt tablets. The respondent required licensees of its machine to buy its own salt tablets, which were not patented. In holding that the respondent's complaint must be dismissed, the court said: "It is a principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. [Citations.]" The court rejected the argument "that the equitable maxim that a party seeking the aid of a court of equity must come into court with clean hands applies only to the plaintiff's wrongful conduct in the particular act or transaction which raises the equity, enforcement of which is sought," noting that while " 'equity does not demand that its suitors shall have led blameless lives,' [citations] * * * additional considerations must be taken into account where maintenance of the suit concerns the public interest as well as the private interests of suitors." 314 U.S. at 492-93; 86 L. Ed. at 366.

In determining whether to exercise their extraordinary jurisdiction, courts of equity customarily evaluate the conduct of the plaintiff in terms of public policy apart from the other issues in a case, and they deny him standing to maintain his action where his conduct has been contrary to that policy. (See, *e.g., Precision Instrument Manufacturing Co.* v. *Automotive Maintenance Machinery Co.,* 324 U.S. 806, 89 L. Ed. 1381, 65 S. Ct. 993; *Flack* v. *Warner,* 278 Ill. 368; *Carr* v. *Hoy,* 2 N.Y.2d 185, 139 N.E.2d 531.) And in such cases the courts have not concerned themselves with the legality or propriety of the defendant's conduct.

Similarly, our attention in this case must focus on the conduct of the plaintiffs, the nature of the interest they seek to protect and its relation to public policy, rather than on the extent of that interest or on the legality of the defendant's conduct. Because the contracts upon which the plaintiffs' actions are based are contrary to public policy, the circuit court should have dismissed the complaints in the

consolidated case. Its decree is therefore reversed and the cause remanded with directions to do so.

The foregoing opinion was prepared while *Jones* v. *Alfred H. Mayer Co.*, 392 U.S. 409, 20 L. Ed. 2d 1189, was under advisement in the Supreme Court of the United States, and its adoption was postponed pending the decision of that case. The *Jones* case was decided on June 17, 1968, and the conclusions there reached reinforce the considerations of public policy expressed in this opinion.

*Reversed and remanded, with directions.*