**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220287-U

Order filed March 29, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| CITY OF WHEATON, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0287 |
| | ) | Circuit No. 20-OV-1375 |
| ROBERT W. JONES, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Neal W. Cerne, |
| | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Albrecht and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The denial of defendant's motion for summary judgment is affirmed because questions of material fact remained that precluded the entry of summary judgment. The trial court's factual finding that defendant violated the cited housing code provisions is affirmed because it is not against the manifest weight of the evidence. Because the public official's acts were not outside the scope of his authority, defendant's counterclaim for injunctive relief was properly denied.

¶ 2     The City of Wheaton filed 11 housing code violations against Robert W. Jones, who then filed a counterclaim seeking injunctive relief. Jones subsequently filed a motion for summary judgment that was denied, and the case proceeded to trial. After trial, Jones was found to be in

violation of all cited provisions, and the trial court denied his counterclaim. He appealed from each of those rulings. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In 2016, a housing inspector employed by plaintiff, the City of Wheaton (City), notified defendant, Robert W. Jones, that his residential property was in violation of a number of municipal housing codes. After receiving complaints about the condition of Jones's garage door, a new housing inspector, Ted Fanning, visited Jones's residence in February 2020. During that visit, Fanning observed that the bottom portion of the door was covered in a blue tarp. Later that month, Fanning and Jones discussed the door's condition, with Jones insisting he had a plan to repair it by himself. Subsequently, Fanning revisited the site and sent Jones a letter dated April 27, 2020, stating that the blue tarp was still in place on the garage door. After a phone discussion, Jones extended an invitation to Fanning to review the progress he had made on the repair.

¶ 5        During that visit, Fanning documented a large number of items strewn about in "an unorganized manner" within the garage. Jones recited his right to repair his own home by himself, and, while agreeing with that general proposition, Fanning explained that Jones was entitled to only a reasonable amount of time to make needed repairs. When Jones consented to Fanning walking around the property, Fanning documented the continuation of many of the violations Jones was notified about in 2016. Fanning also noted new violations. The violations and supporting photographs were incorporated into Fanning's April 27 letter to Jones.

¶ 6        The letter also stated that the City had adopted the ICC International Codes in Ordinance No. O-2020 (Code) to protect the health, safety, and welfare of all City residents and neighborhoods. See Wheaton Municipal Ordinance No. O-2020 (adopted February 2020); International Code Council (ICC), 2018 International Property Maintenance Code,

2

https://codes.iccsafe.org/content/IPMC2018P2 (last visited March 8, 2023); ICC, 2018 International Fire Code, https://codes.iccsafe.org/content/IFC2018P6 (last visited March 8, 2023), ICC, 2018 International Residential Code, https://codes.iccsafe.org/content/IRC2018P4 (last visited March 8, 2023). Fanning ordered Jones to make the listed repairs within 60 days, which he believed "provided more than enough reasonable time to rectify some of these issues based upon *** records dating back to 2016." Jones was warned that if the violations were not timely corrected, he could be subject to an additional citation and to legal action that could result in the imposition of fines.

¶ 7 When the repairs were not timely made, the City filed an 11-count ordinance complaint in the Du Page County circuit court on August 7, 2020. Through counsel, Jones filed a motion to dismiss on July 8, 2021, alleging he did not violate "any ordinance as a matter of law" and that he was exercising his statutory and constitutional rights to repair and maintain his own home. After the dismissal motion was denied, Jones's counsel filed a successful motion to withdraw from the representation due to the breakdown of the attorney-client relationship.

¶ 8 After his counsel's withdrawal, Jones appeared *pro se* for all of the subsequent proceedings in the circuit court. He filed an answer, affirmative defense, and counterclaim to the City's ordinance complaint in September. The answer denied any violation of the cited ordinances and asserted the affirmative defense that the City "fail[ed] to state a claim upon which relief can be granted." In his counterclaim, Jones sought to permanently enjoin the City from allowing Fanning "to contact or interact with Defendant" due to Fanning's repeated harassment. Jones alleged that the harassment had injured his peace of mind and was premised solely on Fanning's personal animus toward him.

¶ 9        On November 1, Jones filed a motion for summary judgment. After a hearing, Judge Sexton denied the motion, finding that issues of fact existed. Jones objected to the denial, arguing that no questions of fact remained because the City had not filed a response to his motion. In response, the judge stated that the City "doesn't have to; he has the complaint." Jones then filed a petition seeking a substitution of judge, removal to a court of law, and reconsideration of the denial of his summary judgment motion. The case was reassigned to Judge Cerne.

¶ 10       Before Judge Cerne, Jones again raised his motion to reconsider. After reviewing the motion at the hearing, the court explained that Jones had the burden of showing that no issues of fact remained so that the case could be decided as a matter of law. The trial court concluded that factual issues remained because Jones continued to assert that he had not violated any ordinance. Jones then read law to the trial court that he argued indicated that the City's allegations "are not evidentiary facts" and that evidentiary facts must be considered when ruling on a summary judgment motion. Jones added that the facts alleged in his motion had to be taken as true because the City had not filed a responsive pleading. After hearing the arguments, Judge Cerne denied the motion to reconsider. Prior to trial, Jones filed a "Motion for Acceptance of Propositions of Law," outlining his previously filed memorandum of law in support of his summary judgment motion.

¶ 11       At the start of trial on January 7, Jones raised the motion for acceptance of propositions of law. Judge Cerne stated that he had not received a copy but would consider it as a legal memorandum. During trial, photographs showing each of the violations alleged in the City's complaint were admitted, and inspector Fanning testified. Jones extensively questioned Fanning about the allegations in the City's complaint. At the end of the trial, Jones read portions of his

4

motion for acceptance of propositions of law that asserted his right as a homeowner to repair his own property and that limited the City's actions to those required to "secure the common welfare."

¶ 12    In support of his counterclaim seeking to permanently enjoin the City from permitting Fanning to contact or interact with him, Jones argued that he was entitled to a default judgment. He presented Fanning's testimony, which purportedly showed that the inspector had harassed him out of anger and frustration when Jones declined to perform the work on the garage door within Fanning's stated timeframe. The trial court found Jones guilty of each count of the City's ordinance complaint and denied Jones's counterclaim. Jones was ordered to make the repairs specified in the court's order, and the case was continued until June 17 for sentencing. Jones filed a notice of appeal. On March 1, Jones filed a motion to stay the judgment pending resolution of that appeal.[1] The trial court declined to grant that motion because it "believe[d] that no final order has been entered as no sentence has been imposed." The court also denied Jones's motion to reconsider the denial of stay and filed a modified Bystander's Report of the January 7 hearing.

¶ 13    At Jones's June 17 sentencing hearing, the court found that "[t]here has been no compliance as of [that] date" and imposed fines totaling $2850. Jones made an oral motion to stay the judgment, which was denied because Jones had not posted the requisite bond. He then filed a second notice of appeal and requested a stay of judgment from this court. That stay request was denied because Jones "has failed to present a substantial case on the merits and show that the balance of the equitable factors weighs in favor of granting the stay." See *Stacke v.*

---

[1] In a minute order, we dismissed the appeal in *City of Wheaton v. Jones*, No. 3-22-0039, for want of jurisdiction.

*Bates*, 138 Ill. 2d 295, 309 (1990). This court also denied his motion to reconsider the denial of his motion to stay. Jones subsequently filed an appellate brief; the City did not file an appellee brief.

¶ 14                                    II. ANALYSIS

¶ 15        In this *pro se* appeal, Jones challenges: (1) the denial of his motion for summary judgment; (2) various aspects of the trial on the ordinance violations; and (3) the trial court's handling of his counterclaim for injunctive relief. We address each challenge in turn.

¶ 16                                 A. Summary Judgment

¶ 17        Jones first contends that the trial court erred by denying his motion for summary judgment. Summary judgment rulings are reviewed *de novo*. *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 11. A grant of summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020); *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 16. "Summary judgment is a drastic means of disposing of litigation and, therefore, should be granted only when the right of the moving party is clear and free from doubt. *Adames* [*v. Sheahan*], 233 Ill. 2d [276,] 296 [(2009)]. Thus, the moving party has the burden of production on a summary judgment motion." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49.

¶ 18        Jones argues that he was entitled to summary judgment because no questions of fact existed when the City failed to file an answer to his motion. As Judge Sexton had explained, however, the City was not required to file an answer to avoid a grant of summary judgment because Jones bore the burden of proving the merits of his motion and the City could stand on

6

the factual allegations in its complaint. 735 ILCS 5/2-1005(c) (West 2020) (allowing a grant of summary judgment "*if the pleadings*, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (Emphasis added.)); *Mashal*, 2012 IL 112341, ¶ 49 (stating the movant has the burden of production). Thus, we reject Jones's argument.

¶ 19    Jones also raises another argument in support of his challenge to the summary judgment ruling. Jones's brief expressly incorporates his summary judgment motion and supporting memorandum of law "by reference." Reading that motion, supporting memorandum, and appellate brief together, he contends that no questions of fact existed because he "is not in violation of any ordinance as a matter of law." In his view, only issues of law regarding the City's interpretation of the Code and his rights to autonomy as a property owner remained, enabling the court to grant summary judgment in his favor.

¶ 20    When deciding a motion for summary judgment, all well-pleaded facts in the complaint must be taken as true. *Schalz v. McHenry County Sheriff's Department Merit Comm'n*, 113 Ill. 2d 198, 200 (1986). Accordingly, we will review some of the factual allegations in the City's complaint. In part, the complaint alleges that "[t]he garage door is not maintained in good condition as sections are not installed and covered by a tarp" and that Jones has "[f]ailed to maintain the property in a clean and sanitary condition." In his summary judgment motion and supporting memorandum of law, Jones denies that the garage door was not maintained in good condition and that his property was not maintained in sanitary and clean condition, asserting that the photos taken by the inspector failed to support those allegations.

¶ 21    The parties' conflicting contentions about the condition of the property are precisely the types of matters that create questions of fact to be decided by the trier of fact. See *West Bend*

7

*Mutual Insurance. v. Norton*, 406 Ill. App. 3d 741, 744 (2010) (explaining that "whether an insurer's action in denying or delaying payment of a claim is vexatious or unreasonable is a question of fact"). Thus, at a minimum, those portions of the City's complaint and Jones's response created questions of material fact that precluded the entry of summary judgment as a matter of law. For that reason, we affirm the trial court's denial of Jones's motion for summary judgment and do not review the questions of law that he posits should have been decided in his favor.

¶ 22                                                    B. Trial

¶ 23          Next, Jones contends that the trial court failed to properly assess the credibility of the City inspector, Ted Fanning. In support of this contention, he quotes extensively from Fanning's cross-examination answers addressing the charges in the City's complaint. Jones characterizes many of those responses as patently evasive or outright lies.

¶ 24          Because the trier of fact is able to observe the demeanor of the witnesses and to hear the trial testimony, it is in the best position to make credibility determinations, and its factual findings are given substantial deference on appeal. Reviewing courts will not upset those findings unless they are against the manifest weight of the evidence. *In re Edmonds*, 2014 IL 117696, ¶ 35. A factual finding is contrary to the manifest weight of the evidence if the opposite conclusion is clearly evident. *Id.*

¶ 25          The record on appeal reveals that the trial court did not make any express determination about Fanning's credibility or the quality of his responses on cross-examination. The court simply found that the City had proven the charges in its complaint and ordered Jones to make the specified repairs. From that bare record, we cannot conduct a direct review of the trial court's alleged credibility findings. The record on appeal reveals no such findings, and Jones cites no

8

authority for the proposition that the trier of fact must make such a determination on the record. As the trier of fact, the trial court's findings were the result of its review of an unknown, and unknowable, combination of the evidence, including the testimony elicited and the photographs showing the alleged violations. Under those circumstances, we reject Jones's claim that the trial court improperly assessed Fanning's credibility and "simply accepted everything Fanning said was true."

¶ 26 Next, Jones argues that the trial judge failed to review the applicable ordinances and apply the relevant law. Without that guidance, Jones maintains that "there was no standard of proof or burden of proof" applied by the court. As an example, he claims that the trial court "failed to take notice that the [Code] limited itself to issues affecting public health, safety and welfare. By finding Defendant guilty on all counts, it proves that this restriction was never considered." Jones also asserts that the trial court's rulings were made without "conscientious judgment and ignored recognized principles of law."

¶ 27 Jones correctly notes that the City was required to establish the ordinance violations by a preponderance of the evidence. *Village of Kildeer v. LaRocco*, 237 Ill. App. 3d 208, 211 (1992). He also asserts that the City failed to satisfy its burden of proving that the alleged violations "affected public health, safety or welfare; as that was the intent of the ordinance" because "Fanning supplied no evidence or credible testimony that there was a threat to public health, safety or welfare for any of the conditions that he cited." He adds that the trial court's finding that he had violated the Code was against the manifest weight of the evidence because the photographs presented at trial "did not address the issue of public health and safety." Despite this allegedly complete absence of proof, the trial court concluded that he was guilty on all counts,

9

demonstrating that the City "was held to no standard of proof and thus had no burden of proof " and that the trial court ignored the law. We disagree.

¶ 28 Jones misconstrues the relationship between the purpose of the Code and the provisions in it. The provisions in the Code were enacted, and must be read, to support the Code's stated purpose. As the court explained in *City of Chicago v. RN Realty, L.P.*, 357 Ill. App. 3d 337, 343 (2005), "[t]he purpose of the Building Code was to protect the public from unsafe conditions." By stating the purpose of the Code, the drafters did not also impose an additional, and independent, evidentiary burden on the City. Rather, the provisions in the Code were intended to serve the Code's express, overarching purpose of "ensur[ing] public health, safety and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises." Code § 101.3 (stating "This Code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises"). Thus, if the City satisfied its burden of proving by a preponderance of the evidence that the conditions on Jones's property violated the charged ordinances, it also established that those violations impacted the public health, safety, and welfare. A separate showing demonstrating that the purpose of the Code was also met was not necessary.

¶ 29 Moreover, the mere fact that the trial court found that Jones violated the ordinances does not show that it failed to apply any legal standards or to impose any burden on the City, nor does it establish that the court completely ignored the language of the Code. As its starting point, Jones's contrary argument presupposes that he was, in fact, not guilty of committing those violations. The question of his guilt or innocence, however, was reserved for the trial court, which bore the duty of resolving that ultimate issue of fact. As the trier of fact, the trial court was

10

free to weigh all the evidence before it and to draw any inferences that would normally flow from that evidence. Indeed, even in the context of a criminal case, where the burden of proof is substantially higher, the trier of fact is not required to seek out every possible explanation that is consistent with the defendant's innocence. *People v. Holmes*, 2018 IL App (3d) 160060, ¶ 29. Standing alone, the trial court's finding of guilt does not overcome Jones's burden on appeal of demonstrating that the court failed to apply the relevant legal standards and Code provisions.

¶ 30    To prove its case, the City had to show by a preponderance of the evidence that Jones violated the cited ordinance provisions. *Village of Kildeer*, 237 Ill. App. 3d at 211. The trial court's decision that the City satisfied that burden is not subject to reversal unless it is against the manifest weight of the evidence. *Van Dyke v. White*, 2019 IL 121452, ¶ 68. A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Id.* We have carefully examined Fanning's testimony and the photographs in the record in light of the criteria enumerated in the charges in the City's complaint. Based on that review, we cannot say that the trial court's finding that Jones committed the violations was against the manifest weight of the evidence. Accordingly, we affirm the trial court's ruling.

¶ 31                              C. Injunctive Relief

¶ 32    Finally, Jones argues that the trial court improperly declined to enter a favorable judgment on his counterclaim, which "request[ed] that, as a matter of equity, *** the City of Wheaton, be permanently enjoined from allowing Ted Fanning, the current code enforcement officer, to contact or interact with Defendant." Jones's argument is premised on the belief that Fanning asserted the ordinance violations solely out of personal animus after Jones refused to make the requested repairs within Fanning's desired timeframe. In denying relief on the

11

counterclaim, the trial court asserted that it lacked the authority to enjoin Fanning from doing his job.

¶ 33     As Jones notes, "Ordinarily, injunctive relief will not be granted against a public officer with respect to his official acts, unless such acts are outside his authority or are unlawful. See *Chapman v. Watson*, 40 Ill. 2d 408 (1968). This is in general agreement with earlier decisions which held the discretion vested in public officials will not be controlled by injunction unless fraud, corruption, oppression, or gross injustice is shown. *Stewart v. Department of Public Works*, 336 Ill. 513 (1929); *Fairbank v. Stratton*, 14 Ill. 2d 307 (1958). *Rocke v. County of Cook*, 60 Ill. App. 3d 874, 875 (1978). We have already upheld the trial court's determination that Jones committed the ordinance violations. Thus, we conclude that the charges filed were firmly rooted in fact and were not fraudulent, oppressive, or grossly unjust.

¶ 34     Moreover, Jones's counterclaim sought to enjoin a public official from performing the duties of his office. Pursuant to Code section 104.1, "The code official is hereby authorized and directed to enforce the provisions of this code. The code official shall have the authority to render interpretations of this code and to adopt policies and procedures in order to clarify the application of its provisions. Such interpretations, policies and procedures shall be in compliance with the intent and purpose of this code." Code § 104.1. Accordingly, the Code granted Fanning the authority to enforce and interpret the ordinance provisions. His act of raising the Code violations alleged in the City's complaint were within both his discretion as a code official and the scope of his official authority. Because Fanning's acts were not unlawful or outside the scope of his authority, a grant of injunctive relief would have been improper. See *Rocke*, 60 Ill. App. 3d at 875 (stating the conditions for obtaining injunctive relief against a public official). The trial court did not err by declining to grant Jones's request for injunctive relief.

¶ 35                    III. CONCLUSION

For the reasons stated, we affirm the Du Page County Circuit Court's judgments that were challenged by Jones. Due to our disposition of this case, we need not address Jones's request to have the cause remanded to a different court for further proceedings.

¶ 36        Affirmed.