**2022 IL 127040**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127040)

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 50, Appellee, v. THE CITY OF PEORIA, Appellant.

*Opinion filed January 21, 2022.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

## OPINION

¶ 1 Following the passage of an ordinance amending the Peoria City Code's provision on line-of-duty disabilities, the International Association of Fire Fighters, Local 50 (Union), filed suit in the circuit court of Peoria County seeking a declaratory judgment challenging several definitions contained in the ordinance. Following cross-motions for summary judgment, the circuit court granted summary

judgment in favor of the Union and denied the City of Peoria's motion. The appellate court affirmed. 2021 IL App (3d) 190758, ¶ 14. We allowed the City's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 2                              BACKGROUND

¶ 3        In 1997, the Illinois General Assembly passed the Public Safety Employee Benefits Act (Act) (820 ILCS 320/1 *et seq.* (West 2018)). See Pub. Act 90-535, § 1 (eff. Nov. 14, 1997). In section 5, the General Assembly states that it "determines and declares that the provisions of this Act fulfill an important State interest." 820 ILCS 320/5 (West 2018). That interest, as detailed in section 10, requires that an employer

> "who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee." *Id.* § 10(a).

¶ 4        However, because the Act does not provide a definition for "catastrophic injury," this court was ultimately tasked with discerning the legislature's intent as to that term's meaning in 2003. In *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003), this court held that "catastrophic injury" is "synonymous with an injury resulting in a line-of-duty disability under section 4-110 of the [Illinois Pension] Code" (40 ILCS 5/4-110 (West 2000)). That holding has never been disturbed.

¶ 5        Nonetheless, on June 12, 2018, the City passed an ordinance—amending section 2-350 of the Peoria City Code—which, relevant here, defined terms used in section 10 of the Act. Specifically, the ordinance defined the terms "catastrophic injury" and "injury" but also added and defined the term "gainful work." See Peoria Ordinance No. 17584 (approved June 12, 2018); Peoria City Code § 2-350 (amended June 12, 2018). On July 23, 2018, the Union filed a complaint for declaratory judgment, alleging that the City had defined the terms in a way that violates the Act. In its answer, the City denied that it had exceeded its home rule authority in passing the ordinance; that the ordinance violated or contradicted the Act, the Illinois Constitution, or any other statute; and that the ordinance was

invalid or otherwise ineffective. The parties filed cross-motions for summary judgment. See 735 ILCS 5/2-1005 (West 2018).

¶ 6    Pertinent here, the circuit court granted summary judgment in favor of the Union, finding:

"3. That the meanings of the terms 'catastrophic injury' and 'injury' as used in 820 ILCS 320/10(a) and (b) are not ambiguous when considering the full text of those sections along with Judicial opinions construing and defining those terms.

4. That the City of Peoria does not have the home [r]ule authority to redefine the terms 'catastrophic injury' and 'injury' as it has in Peoria, IL Code of Ordinances Sec. 2-350."

The circuit court denied the City's motion for summary judgment. Accordingly, the definitions of "catastrophic injury" and "injury" contained in the ordinance were held to be "invalid, null, and void." By extension, the ordinance's definition of "gainful work" was stricken as surplusage.

¶ 7    On appeal, the appellate court observed that the City, as a home rule unit, could properly "adopt procedures for determining claims under the Act." 2021 IL App (3d) 190758, ¶ 11 (citing *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402). The court clarified that, pursuant to its home rule authority and section 20 of the Act, the City "could define an administrative procedure for determining benefits under the Act, but it could not redefine the Act's substantive terms to the extent that the City would provide benefits inconsistent with the Act." *Id.* The court thereafter held:

"After the Illinois Supreme Court has construed a state statute, 'that construction becomes, in effect, a part of the statute and any change in interpretation can be effected by the General Assembly if it desires so to do.' *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19 (quoting *Mitchell v. Mahin*, 51 Ill. 2d 452, 456 (1972)). Pursuant to *Krohe*, 'a pension board's award of a line-of-duty disability pension establishes [as a matter of law] that the public safety employee suffered a catastrophic injury as required by section 10(a) of [the Act].' *Id.* ¶ 25. The Act was never amended in response to *Krohe*.

Thus, if a firefighter is injured and awarded line-of-duty disability, he has a catastrophic injury pursuant to section 10(a) of the Act. We conclude that the City's definitions of 'catastrophic injury,' 'injury,' and 'gainful work' were inconsistent with the substantive requirements of the Act, and the ordinance was not a valid exercise of home rule authority." (Internal quotation marks omitted.) *Id.* ¶ 12.

¶ 8 We allowed the City's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We also allowed the following parties to file *amicus curiae* briefs: the Illinois Public Employer Labor Relations Association, the Associated Firefighters of Illinois and Illinois AFL-CIO, and the Metropolitan Alliance of Police and the Police Benevolent and Protective Association of Illinois. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 9                                             ANALYSIS

¶ 10 This appeal emanates from the circuit court's grant of summary judgment in favor of the Union and denial of the City's motion for summary judgment. Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2018)).

"[S]ummary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Pielet v. Pielet*, 2012 IL 112064, ¶ 29.

¶ 11 "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26 (citing *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 10). "Where a case is decided through summary judgment, our review is *de novo*." *Pielet*, 2012 IL 112064, ¶ 30 (citing *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010)). *De novo* review is also appropriate, as we must construe both the Act and the ordinance. See *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 32 ("An issue of

statutory interpretation presents a question of law subject to *de novo* review."); *City of East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542 (1967) (noting that "the same rules which govern the construction of statutes are to be applied in construing municipal ordinances").

¶ 12   "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. "No part of a statute should be rendered meaningless or superfluous." *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 14.

¶ 13   Section 6(a) of article VII of the Illinois Constitution of 1970 provides that "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). Subsection (i) provides that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." *Id.* § 6(i).

¶ 14   Here, the City argues that the ordinance represents a proper exercise of its home rule powers for two reasons. First, the City contends that a clear understanding of what constitutes a "catastrophic injury" is essential to its statutory role of administering benefits pursuant to the Act. Second, the City maintains that separation of powers principles reserve both lawmaking and preemption of home rule powers for the General Assembly. Stated differently, the City's position is that the definitions contained in the ordinance need only be consistent with the text of the Act—absent any subsequent elucidation by this court's case law. Thus, according to the City, we are to proceed as though *Krohe* and its progeny simply do not apply and that *Krohe*'s definition of the term "catastrophic injury" has not been incorporated into the Act via legislative acquiescence. The City explains that *Krohe*'s definition of "catastrophic injury" is only applicable where a home rule unit has not yet exercised its powers to define that term for itself.

¶ 15   The Union counters that the City has improperly tried to redefine the terms "catastrophic injury" and "injury." According to the Union's position, case law and

the text of the Act have already made clear the meaning of these terms. The Union posits that the City's exercise of home rule authority fails under both prongs of the test utilized in determining whether a home rule unit has constitutionally exercised its home rule power. Pursuant to that dual inquiry, " '[i]f a subject pertains to local government and affairs, and the legislature has not expressly preempted home rule, municipalities may exercise their power.' " *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 36 (quoting *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 22 n.2).

¶ 16    We must first address the City's contention that it is not bound to follow *Krohe*'s definition of the term "catastrophic injury." The City argues that *Krohe*'s definition of "catastrophic injury" did not actually become part of the Act because, pursuant to the Illinois Constitution of 1970, only the General Assembly may limit a home rule unit's authority. Where the General Assembly intends to do so, it "must do so specifically." See *id.* ¶ 43. Thus, according to the City, it was incumbent upon the General Assembly to amend the Act to explicitly state that it agreed with *Krohe*'s definition of "catastrophic injury." Per the City, legislative acquiescence is insufficient—as a mere canon of statutory construction—to "override" the constitution. In support, the City cites section 1 of article II of the Illinois Constitution of 1970, which states: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1.

¶ 17    It is the City's argument, however, that runs afoul of separation of powers principles and conflates case law on home rule preemption. As this court explained in *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19:

"When a court construes a statute and the legislature does not amend it to supersede that judicial gloss, we presume that the legislature has acquiesced in the court's exposition of legislative intent. [Citations.] 'Furthermore, after this court has construed a statute, that construction becomes, in effect, a part of the statute and any change in interpretation can be effected by the General Assembly if it desires so to do.' [Citations.]"

¶ 18    There, this court held that an award of a line-of-duty disability pension establishes that a catastrophic injury occurred as a matter of law. *Id.* ¶ 28. *Heelan* observed that this court had decided *Krohe* in 2003 and subsequently decided

*Nowak v. City of Country Club Hills*, 2011 IL 111838, but at the time of *Heelan* in 2015, the legislature still had not altered the court's construction of the term "catastrophic injury." *Heelan*, 2015 IL 118170, ¶ 27. Accordingly, as explained in *Heelan*, " '[o]ur interpretation is considered part of the statute itself until the legislature amends it contrary to that interpretation.' " *Id.* (quoting *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 343 (2008)).

¶ 19        Despite the City's representations, when our judicial construction of a statute is informed by legislative acquiescence, the legal effect of that construction is not somehow minimized. Were we to accept the City's argument, then nearly every judicial construction and interpretation of a statutory provision would be called into question. Fundamentally, this court is always concerned with discerning legislative intent. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16 (observing that "[o]ur primary goal is to interpret and give effect to the legislature's intent" (citing *Corbett v. County of Lake*, 2017 IL 121536, ¶ 30)). We necessarily look to canons of statutory construction to glean that intent. Once we have determined that intent—and unless or until the legislature indicates otherwise—the law is what we say it is. This is not "lawmaking" or "legislating"— and the City fails to cite any authority to support its assertion that judicial interpretation of statutory terms violates separation of powers when a home rule unit is involved. See *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 378 (1997) ("It is this court's duty to interpret the law and to protect the rights of individuals against acts beyond the scope of the legislative power."). We therefore reject the City's attempt to curtail the holdings of this court by impermissibly dissecting the component parts of our analysis. Regardless of what canon of statutory interpretation or interpretive device this court relies upon in its analysis, a holding of the Illinois Supreme Court has the force of law.

¶ 20        In a similar vein, we are not persuaded by the City's assertion that there was impermissible "judicial preemption" of the City's home rule authority. For this proposition, the City cites *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133 (1994), and *City of Chicago v. Roman*, 184 Ill. 2d 504 (1998). These cases are distinguishable. In *Village of Bolingbrook*, the defendant relied on the General Assembly's declaration that it was " 'the policy of the State that public utilities shall continue to be regulated effectively and comprehensively' " in support of its argument that the Public Utilities Act contemplated exclusive exercise

by the State of any power or function of a home rule unit in that context. *Village of Bolingbrook*, 158 Ill. 2d at 137 (quoting Ill. Rev. Stat. 1991, ch. 111$^{2}$/$_{3}$, ¶ 1-102). This court rejected the defendant's argument, explaining:

"Section 6(h) [of the Illinois Constitution] provides that the General Assembly may 'provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit.' [Citation.] We believe the language of section 6(h) is clear. In order to meet the requirements of section 6(h), legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State. [Citations.] It is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power. Accordingly, we do not believe that the requirements of section 6(h) have been met in the present case." *Id.* at 138.

¶ 21        In *Roman*, at issue was whether a home rule unit had authority to create a mandatory minimum sentence for violating an ordinance. 184 Ill. 2d at 511-12. This court first explained that, per section 6(d)(2) of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(d)(2)) and the Committee on Local Government of the 1970 Illinois Constitutional Convention (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1602), section 6(d)(2) permitted home rule units to impose fines and jail sentences for nonfelonies. *Roman*, 184 Ill. 2d at 513-14. Next, the court considered "whether the legislature ha[d] specifically limited the concurrent exercise of this power or specifically declared that the state's exercise of this power is exclusive." *Id.* at 515. Again, like in *City of Bolingbrook*, the defendant argued that the legislature had done so by way of "comprehensive" state criminal law. *Id.* at 515-16.

¶ 22        The *Roman* court rejected the defendant's argument that the legislature had totally preempted the area of prescribing mandatory minimum sentences. The court explained that the General Assembly had not specifically indicated " 'by law for the exclusive exercise by the State of any power or function of a home rule unit.' " *Id.* at 516 (quoting Ill. Const. 1970, art. VII, § 6(h)). Also, per section 6(i) of the Illinois Constitution, " 'unless a State law *specifically* states that a home rule unit's power is limited, then the authority of a home rule unit to act concurrently with the State cannot be considered rejected.' " (Emphasis in original.) *Id.* at 516-17 (citing *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 188 (1992)). Comprehensive

legislation was "insufficient to declare the state's exercise of power to be exclusive." *Id.* at 517.

¶ 23         Finally, the *Roman* court held that the legislature had not limited or partially excluded the City's home rule power to establish a mandatory minimum sentence for an ordinance violation. *Id.* at 519. The court explained:

> "the General Assembly must specifically so limit a home rule unit's concurrent exercise of power. [Citation.] Again, the General Assembly knows how to accomplish this, and has done so countless times, expressly stating that, pursuant to article VII, section 6(i), of the Illinois Constitution, a statute constitutes a limitation on the power of home rule units to enact ordinances that are contrary to or inconsistent with the statute." *Id.* at 520.

Accordingly, in neither *City of Bolingbrook* nor *Roman* did the General Assembly expressly indicate by statute that it intended to restrict or limit home rule authority to satisfy either section 6(h) or section 6(i) of the Illinois Constitution.

¶ 24         Unlike in *City of Bolingbrook* or *Roman*, here, the General Assembly enacted section 20 of the Act, which specifically limits the exercise of concurrent authority by home rule units:

> "Home Rule. An employer, including a home rule unit, that employs a full-time law enforcement, correctional or correctional probation officer, or firefighter *may not provide benefits to persons covered under this Act in a manner inconsistent with the requirements of this Act*. This Act is a *limitation under subsection (i) of Section 6* of Article VII of the Illinois Constitution on the concurrent exercise of powers and functions exercised by the State." (Emphases added.) 820 ILCS 320/20 (West 2018).

Thus, it is not our case law that preempts the City's definitions but the Act itself. We likewise reject the City's insinuation that section 20 is not specific enough as to what it limits. For example, the City intimates that the General Assembly was required to state that home rule units are not allowed to independently define the terms "catastrophic injury" and "injury."

¶ 25         The City cites no authority for the proposition that the General Assembly must anticipate every way that a home rule unit may attempt to circumvent the Act's

requirement via ordinance. Furthermore, in *Roman*, this court cited the Carrier and Racing Pigeon Act of 1984 (510 ILCS 45/1 *et seq.* (West 1992)) as an example of where the General Assembly had limited the concurrent exercise of home rule power. *Roman*, 184 Ill. 2d at 520. Section 8 of the Carrier and Racing Pigeon Act of 1984 provides: "This Act applies to all municipalities and counties pursuant to paragraph (i) of Section 6 of Article VII of the Constitution, this Act is a limitation upon the power of home rule units to enact ordinances contrary to this Act." 510 ILCS 45/8 (West 1992). Both section 8 of the Carrier and Racing Pigeon Act of 1984 and section 20 of the Act at issue here not only expressly limit the concurrent exercise of home rule units' power, but they both require that the concurrent exercise of home rule units be consistent with the respective statutory schemes. *Roman*, 184 Ill. 2d at 520 (noting that "the Corrections Code *** does not expressly limit the concurrent exercise of the City's home rule power or require such exercise to conform to or be consistent with the Code").

¶ 26     Having dispensed with the City's arguments, we can properly determine whether the ordinance's definitions are consistent with the Act. We decline to pass on the parties' arguments as to whether the ordinance pertains to local affairs and thus constitutes a permissible exercise of the City's home rule authority. See *Palm*, 2013 IL 110505, ¶¶ 35-37. This is because, as explained below, the definitions contained in the ordinance are inconsistent with the requirements of the Act and are thus preempted. See *id.* ¶ 36 (explaining that municipalities may exercise their home rule power " '[i]f a subject pertains to local government and affairs, *and* the legislature has not expressly preempted home rule' " (emphasis added) (quoting *StubHub*, 2011 IL 111127, ¶ 22 n.2)).

¶ 27     At the outset, we observe that, at oral argument, counsel for the City admitted that the ordinance's definitions of "catastrophic injury" and "injury" are inconsistent with those terms as provided in the Act, if we acknowledge the validity of the "judicial gloss" that has been superimposed onto those terms. We do. Therefore, the City's argument that the Act is "silent" on this front fails. Despite

- 10 -

the City's concession, we will set forth several examples how the ordinance is inconsistent with the Act.[1]

¶ 28    The term "catastrophic injury" appears in section 10(a) of the Act, which is titled "*Required* health coverage benefits." (Emphasis added.) 820 ILCS 320/10(a) (West 2018); see also *id.* § 20 (forbidding a home rule unit from "provid[ing] benefits *** inconsistent with the requirements of" the Act). As noted, "catastrophic injury" is "synonymous with an injury resulting in a line-of-duty disability under section 4-110 of the Illinois Pension Code." *Krohe*, 204 Ill. 2d at 400.

> "Line of duty disability pensions are paid to firefighters who 'as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, [are] found *** to be physically or mentally permanently disabled for service in the fire department.' " *Id.* at 394 n.1 (quoting 40 ILCS 5/4-110 (West 2000)).

¶ 29    The ordinance instead defines "catastrophic injury" as "[a]n injury, the direct and proximate consequences of which permanently prevent an individual from performing any gainful work." Peoria City Code § 2-350(b) (amended June 12, 2018). "Gainful work"—a term not appearing in the Act itself—is incorporated into the definition of "catastrophic injury" and is defined as "[f]ull- or part-time activity that actually is compensated or commonly is compensated." *Id.*

¶ 30    The ordinance's definition of "catastrophic injury" is inconsistent with the requirements of the Act in the following ways. First, it introduces the term and legal showing of "direct and proximate consequences." Neither the language of the Act nor case law requires such a showing. In fact, to be entitled to a line-of-duty disability pension, a "firefighter need not prove that his or her acts of duty were the 'sole or even the primary cause' of the disability." *City of Peoria v. Firefighters' Pension Fund*, 2019 IL App (3d) 190069, ¶ 35 (quoting *Prawdzik v. Board of Trustees of the Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024, ¶ 40). Second, the ordinance's definition requires that a catastrophic injury result in the permanent disability of a firefighter to perform "any

---

[1]We do not represent that these examples exhaustively demonstrate the terms' inconsistency with the Act.

gainful work." Peoria City Code § 2-350(b) (amended June 12, 2018). The Act's definition of that term only requires that a firefighter be permanently disabled from performing service in the fire department. Under the ordinance, if a firefighter can volunteer part-time as a store greeter, he or she will not be considered to have suffered a catastrophic injury—even if that firefighter is not compensated. This is because, under the definition of "gainful work," if that sort of volunteer work "commonly is compensated," a firefighter is not permanently prevented from performing any gainful work and thus will not meet the showing for a "catastrophic injury." Therefore, the ordinance's definitions of "catastrophic injury" and "gainful work" operate to impermissibly disqualify those who would otherwise be "persons covered under [the] Act." 820 ILCS 320/20 (West 2018).

¶ 31        Additionally, to be eligible for benefits pursuant to the Act, a "catastrophic injury" must also satisfy section 10(b). Section 10(b) uses the term "injury" and states:

"In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. Nothing in this Section shall be construed to limit health insurance coverage or pension benefits for which the officer, firefighter, spouse, or dependent children may otherwise be eligible." *Id.* § 10(b).

¶ 32        The ordinance, however, defines "injury" as follows:

"A traumatic physical wound (or a traumatized physical condition of the body) directly and proximately caused by external force (such as bullets, explosives, sharp instruments, blunt objects, or physical blows), chemicals, electricity, climatic conditions, infectious disease, radiation, virus, or bacteria, but does not include:

        (1) Any occupational disease; or

- 12 -

(2) Any condition of the body caused or occasioned by stress or strain." Peoria City Code § 2-350(b) (amended June 12, 2018).

¶ 33　　Again, the ordinance's definition of "injury" is at odds with that term's meaning under the Act. The Act's textual description of an "injury" refers to situational contexts—not to specific mechanisms of external force. See 820 ILCS 320/10(b) (2018). The Act does not limit an "injury" to "traumatic physical wound[s]" or "traumatized physical condition[s] of the body." See Peoria City Code § 2-350(b) (amended June 12, 2018).

¶ 34　　Also, the ordinance's definition runs afoul of what would qualify as a line-of-duty disability. For example, as noted in *Firefighters' Pension Fund*, "[i]f there is a 'sufficient nexus' between the injury and the acts of duty, then the acts of duty need only be a 'causative' or 'aggravating, contributing[,] or exacerbating factor' to the disability." 2019 IL App (3d) 190069, ¶ 35 (quoting *Prawdzik*, 2019 IL App (3d) 170024, ¶ 40). Furthermore, "a disability pension may even be based upon the 'aggravation of a preexisting condition.' " *Id.* (quoting *Prawdzik*, 2019 IL App (3d) 170024, ¶ 40). Thus, a firefighter was entitled to a line-of-duty disability pension due to "cumulative injuries incurred in or resulting from the performance of an act(s) of duty." (Internal quotation marks omitted.) *Id.* ¶ 36. The firefighter's disability resulted from "some aggravation of the pre-existing right knee osteoarthritis" that had been at least in part brought about by the firefighter spending numerous years responding to calls, crawling in and out of buildings on his hands and knees, and wearing 80-pound turnout gear. (Internal quotation marks omitted.) *Id.* ¶ 37. The ordinance's definition of "injury," which requires the injury to be "directly and proximately caused," does not accord with case law—and, thus, the law informing what constitutes a line-of-duty disability. Accordingly, as with the ordinance's definitions of "catastrophic injury" and "gainful work," the definition of "injury" is inconsistent with the Act in that it disqualifies those who would otherwise be "persons covered under [the] Act." 820 ILCS 320/20 (West 2018).

¶ 35　　For these reasons, we affirm the grant of summary judgment entered in the Union's favor.

¶ 36                               CONCLUSION

¶ 37        Because the ordinance's definitions of certain terms are inconsistent with the requirements of the Act and are therefore preempted, the ordinance is not a valid exercise of home rule authority. Accordingly, we affirm the grant of summary judgment in the Union's favor and denial of the City's motion for summary judgment.

¶ 38        Judgments affirmed.