NO. 4-21-0071

FILED
June 6, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JARED M. STAAKE, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| THE DEPARTMENT OF CORRECTIONS, | ) | No. 18MR710 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices DeArmond and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        In February 2018, plaintiff Jared M. Staake, an inmate in the custody of the Illinois Department of Corrections (DOC), *pro se* filed a complaint for declaratory judgment and injunctive relief against defendant, DOC, pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2018)). The complaint also sought civil penalties, attorney fees, and costs. While Staake's complaint was pending, DOC provided him with copies of the records he sought.

¶ 2        In November 2019, Staake filed a motion for partial summary judgment, and in February 2020, DOC filed a motion for summary judgment. In November 2020, the trial court granted summary judgment in favor of DOC on all issues.

¶ 3        Staake appeals, arguing that (1) the DOC's midlitigation disclosure of the documents did not render his claim for declaratory relief moot and (2) the trial court erred by

granting summary judgment regarding his claims for costs and civil penalties. We affirm the trial court's entry of summary judgment based on mootness but reverse and remand regarding Staake's claims for costs and civil penalties.

¶ 4                                    I. BACKGROUND

¶ 5                               A. Staake's FOIA Requests

¶ 6                                1. *The Lippert Complaint*

¶ 7        In February 2018, Staake filed a FOIA request with DOC for a copy of "[t]he controlling complaint on file in a class action lawsuit against [DOC] personel [*sic*], *i.e.*, Lippert v. Godinez, #1:10-cv-04603" (Lippert complaint). In March 2018, DOC denied his request, citing section 7(1)(a) of the FOIA, which reads as follows:

> "(1) When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying. Subject to this requirement, the following shall be exempt from inspection and copying:
>
> > (a) Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." *Id.* § 7(1)(a).

¶ 8        DOC explained in its written response to Staake's request that, because its regulations prohibited an inmate from "[p]osessing [*sic*] or soliciting unauthorized personal information regarding another [inmate], *** including, but not limited to, personnel files [and] *** medical or mental health records" (see 20 Ill. Adm. Code 504.Appendix A (2017) (offence No.

211, possession or solicitation of unauthorized personal information)), the Lippert complaint, which contained such information, was exempt from disclosure under section 7(1)(a) of the FOIA (5 ILCS 140/7(1)(a) (West 2018)). Later that month, Staake requested that DOC reconsider its decision because in his initial request he asked DOC to "redact sensitive or exempt information [and] *** release any segregable portion."

¶ 9 In April 2018, DOC denied Staake's request for reconsideration because he did not "submit[ ] a request for records" but instead submitted "a general request for data, information, [or] statistics." In response, Staake requested review by the Public Access Counselor (PAC) pursuant to section 9.5 of the FOIA. See *id.* § 9.5 (providing for review of denied FOIA requests by the Office of the Attorney General). Defendant attached to his response copies of his original FOIA request and DOC's denial of the original request. The PAC "determined that no further inquiry [was] warranted," exercised its discretion to resolve Staake's request for review "by means other than the issuance of a binding opinion," and closed the file.

¶ 10 2. *The Educational Documents*

¶ 11 In August 2018, Staake filed a second FOIA request with DOC for three "educational documents." Specifically, he requested "educational contract[s] for Earned Program Sentence Credits" (EPSCs), which he contended were located either in (1) the "educational building in [Staake's] educational files of Lincoln [Correctional Center]" or (2) his master file in the records office. According to Staake, each document created an agreement under which DOC would award Staake EPSCs, which reduced his term of incarceration, "in exchange for [Staake's] participation and completion of High School Equivalency program[m]ing." Staake alleged that although an inmate normally did not have access to his master file, the documents contained decisions that affected the duration of his sentence, which entitled him to the educational

- 3 -

documents under section 3-5-1(b) of the Unified Code of Corrections (730 ILCS 5/3-5-1(b) (West 2018)). Section 3-5-1(b) provides, "If [DOC] makes a determination under this Code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of factual information relied upon by [DOC] to make the determination ***." *Id.*

¶ 12     In September 2018, DOC denied Staake's request, citing section 7(1)(a) of the FOIA. DOC explained that, under section 3-5-1(b) of the Unified Code of Corrections (*id.*), "the master record files of committed persons shall be confidential and access shall be limited to authorized persons." DOC further explained that " 'other information that [DOC] determines is relevant to the secure confinement and rehabilitation of the committed person' is exempt from release pursuant to 730 ILCS 5/3-5-1(a)(13) [(West 2018)]." According to DOC's brief on appeal, DOC thus "concluded, because the educational [documents] were in Staake's master file, they were exempt from release *** under section 7(1)(a) of [the FOIA]." Staake did not seek reconsideration of his request for the educational documents.

¶ 13                              B. The Complaint

¶ 14     In September 2018, Staake *pro se* filed a complaint against DOC for declaratory and injunctive relief pursuant to section 11 of the FOIA (5 ILCS 140/11 (West 2018)). Staake alleged that by denying his FOIA requests for the Lippert complaint and the educational documents, DOC had willfully and intentionally, or otherwise in bad faith, violated the FOIA. Staake sought five forms of relief: (1) a declaration that DOC's denials were willful and intentional violations of the FOIA or otherwise made in bad faith, (2) "a declaration that [DOC's] acts and omissions violated the [Unified] Code of Corrections," (3) an injunction prohibiting DOC from withholding the requested documents and for DOC to produce those documents, (4) a civil penalty for each violation of the FOIA, and (5) "[a]n award of the full cost arising out of this litigation."

¶ 15        In support of his complaint, Staake attached (1) copies of his FOIA requests, (2) DOC's responses to those requests, (3) his appeal to the PAC, (4) the PAC's response, and (5) copies of other inmates' requests for educational documents, which DOC had also denied.

¶ 16                    C. The Cross-Motions for Summary Judgment

¶ 17        In December 2018, DOC mailed Staake a redacted copy of the Lippert complaint, and in May 2019, DOC mailed Staake copies of the educational documents. These documents were what Staake had previously requested, but DOC withheld from him despite his FOIA requests.

¶ 18        In November 2019, Staake filed a motion for partial summary judgment regarding his claim for declaratory relief. He argued that although his claim for injunctive relief became moot once he was provided with the Lippert complaint and the educational documents, his claims for declaratory relief were still an actual controversy. Staake further argued that in order for the trial court to impose costs and civil penalties on DOC, the court needed to either grant injunctive relief or declaratory relief under sections 11(i) and 11(j) of the FOIA.

¶ 19        Regarding DOC's failure to disclose the Lippert complaint, Staake argued that (1) DOC should have released to him a redacted copy of the complaint consistent with the FOIA and (2) by withholding the documents, DOC violated the FOIA. Regarding the educational documents, Staake argued that "DOC's internal policies, mandate[d] the release of [the materials] 'as authorized by the student.' " Therefore, Staake argued, DOC's reliance on the exemption in section 7(1)(a) was erroneous and DOC violated the FOIA by denying both of Staake's requests for the documents.

¶ 20        In February 2020, DOC filed its own motion for summary judgment on all of Staake's claims, arguing that (1) because DOC disclosed the documents that Staake requested, his claims for declaratory relief were moot; (2) because Staake was a *pro se* litigant proceeding

*in forma pauperis*, he incurred no attorney fees or costs; and (3) Staake failed to demonstrate that DOC willfully and intentionally, or in bad faith, denied his FOIA requests.

¶ 21 In Staake's reply to DOC's motion for summary judgment, Staake argued that his claims for declaratory judgment were not moot because such a judgment was necessary to establish his entitlement to attorney fees, costs, and civil penalties. In addition, Staake argued that summary judgment was inappropriate on his claims for costs and civil penalties because (1) discovery remained pending on those claims and was necessary for their resolution, (2) DOC did not present sufficient evidence to entitle it to summary judgment on those claims, and (3) material facts were still in dispute regarding DOC personnel's state of mind when they denied his requests.

¶ 22 In September 2020, the trial court ordered DOC to file a supplemental memorandum in support of its cross-motion for summary judgment—specifically, regarding the issue of mootness. In DOC's memorandum, it argued that the facts were identical to those in *Turner v. Joliet Police Department*, 2019 IL App (3d) 170819, 123 N.E.3d 1147, and like in that case, Staake's claims for declaratory judgment became moot upon DOC's disclosure of the requested documents. Staake did not file a response to DOC's supplemental memorandum.

¶ 23 In November 2020, the trial court granted DOC's motion for summary judgment. The court found that Staake's "claims for declaratory and injunctive relief regarding disclosures of records [were] moot as [Staake had] received all records sought in his FOIA requests." Regarding attorney fees, costs, and civil penalties, the court found that Staake did not present sufficient evidence to (1) support a finding that DOC acted willfully and intentionally or in bad faith or (2) demonstrate that he had incurred attorney fees or costs. Staake filed a motion to reconsider, which the court denied.

¶ 24 This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26        Staake appeals, arguing that (1) DOC's mid-litigation disclosure of the documents did not render his claim for declaratory relief moot and (2) the trial court erred by granting summary judgment regarding his claims for costs and civil penalties. We affirm the trial court's entry of summary judgment based on mootness but reverse and remand regarding Staake's claims for costs and civil penalties.

¶ 27                              A. The Applicable Law

¶ 28        "[S]ummary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." (Internal quotation marks omitted.) *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 10. "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." (Internal quotation marks omitted.) *Id.* ¶ 11. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28, 978 N.E.2d 1000. If the facts are undisputed, a genuine issue of material fact exists when " 'reasonable persons might draw different inferences from the undisputed facts.' " *Flynn v. Town of Normal*, 2018 IL App (4th) 170070, ¶ 27, 119 N.E.3d 522 (quoting *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49, 981 N.E.2d 951). Appellate courts review grants of summary judgment *de novo*. *City of Peoria*, 2022 IL 127040, ¶ 11.

¶ 29                                  B. Mootness

¶ 30        We first address whether Staake's claims for declaratory relief are moot. "As a

general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." (Internal quotation marks omitted.) *In re Julie M.*, 2021 IL 125768, ¶ 21. An issue is moot when an actual controversy no longer exists between the parties for which relief can be granted. *In re Benny M.*, 2017 IL 120133, ¶ 17, 104 N.E.3d 313. When a public body provides information under the FOIA, even after delay, claims for declaratory or injunctive relief concerning the information's production are moot. *Roxana Community Unit School District No. 1 v. Environmental Protection Agency*, 2013 IL App (4th) 120825, ¶ 41, 998 N.E.2d 961 (concluding "that once a public body provides the information requested under [the] FOIA, even after a lengthy delay, the controversy over the public body's production of documents ceases to exist" (citing *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 709 N.E.2d 1281 (1999))).

¶ 31        Here, Staake was provided with both the Lippert complaint and the educational documents he requested, which were the bases for his complaint. That DOC provided Staake the documents mid-litigation makes no difference in a mootness analysis. See *id.* Because the information Staake requested under the FOIA is no longer being withheld, an actual controversy no longer exists, and Staake's claim for declaratory relief is moot. Accordingly, we affirm the trial court's grant of summary judgment regarding Staake's claim for declaratory relief.

¶ 32        We note, however, that Staake's claims for attorney fees, costs, and civil penalties survive. See *id.* ¶ 42 (determining that under *Duncan*, 304 Ill. App. 3d at 782, the ancillary claims for fees, costs, and a civil penalty survive even after disclosure of the documents requested under the FOIA).

¶ 33        C. The Trial Court's Grant of Summary Judgment Regarding Attorney Fees,

Costs, and Civil Penalties

¶ 34                              1. *Bad Faith and Civil Penalties*

¶ 35          Staake's claims for civil penalties were made pursuant to section 11(j) of the FOIA, which states the following:

> "If the court determines that a public body *willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith*, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence." (Emphasis added.) 5 ILCS 140/11(j) (West 2018).

¶ 36          In other words, to obtain civil penalties, the plaintiff must demonstrate that the public body (1) failed to comply with the FOIA and (2) did so "willfully, intentionally, and in bad faith." *Williams v. Bruscato*, 2021 IL App (2d) 190971, ¶ 14 (citing *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 40, 127 N.E.3d 193 (affirmed the trial court's decision to strike the plaintiff's petition for civil penalties under section 11(j) "because he could not show bad faith on the township's part")). Although the FOIA does not define "bad faith," the Second District in *Williams* defined it as failing to comply with the FOIA "deliberately, by design, and with a dishonest purpose." *Id.* ¶ 15.

¶ 37                              a. The Lippert Complaint

¶ 38          DOC argues that it did not act willfully and intentionally, or otherwise in bad faith, by withholding the Lippert complaint because it relied on a "reasonable interpretation" of section 7(1)(a) in denying Staake's FOIA request. In support, DOC cites *Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879, ¶¶ 51-54, 977 N.E.2d 1216, asserting that a "public body's reasonable interpretation of exemptions failed to show bad faith conduct." However, DOC overstates the value of that case to DOC's position. We view *Rock River Times* as no help at all to DOC.

¶ 39                                    i. *Rock River Times*

¶ 40          In *Rock River Times*, the school district initially cited two exemptions in its first denial of the newspaper's FOIA request and later cited a third different exemption only after the first two were determined to be inapplicable. *Id.* ¶ 20. Ultimately, the appellate court agreed with the trial court that "[t]he record gave a 'clear impression that the [school] understood that it was wrong on all three exemptions, but was looking for a way to save face rather than simply admitting it was wrong' " by asserting the third exemption. *Id.* ¶ 22.

¶ 41          DOC's citing of *Rock River Times* is peculiar because, first, the appellate court in that case *affirmed* the trial court's conclusion that the school district had acted in bad faith by denying a FOIA request. *Id.* ¶ 54. Second, unlike in the present case where the record is scant regarding DOC's reasoning for its rejections, the appellate court in *Rock River Times* had plenty of evidence before it to draw the conclusion that the school district acted in bad faith. See *id.* ¶¶ 3-22. And third, regarding the Lippert complaint, DOC's initial rejection based on section 7(1)(a) of the FOIA and subsequent response to Staake's request for reconsideration, which purportedly provided a new, separate reason for rejection, are very similar to the facts of *Rock River Times*. See *id.* ¶¶ 21-23 (finding bad faith violation of the FOIA).

¶ 42                             ii. *The Entry of Summary Judgment Was Improper*

¶ 43          Because the present case comes before us on a grant of summary judgment, we analyze the trial court's decision in the light most favorable to the nonmoving party—in this case, Staake. See *City of Peoria*, 2022 IL 127040, ¶ 10. Applying this standard, for the reasons that follow, we conclude that summary judgment was premature because questions of material fact remain regarding DOC's denials of Staake's FOIA request for the Lippert complaint.

¶ 44          First, DOC's claim that it could not have acted in bad faith because it had a

reasonable belief that the Lippert complaint was exempt from disclosure based on section 7(1)(a) of FOIA, without more, is difficult for this court—or the trial court for that matter—to determine based on this record at the summary judgment stage.

¶ 45        Section 7(1) provides that certain materials are exempt from disclosure, but the wording of the statute also provides a caveat:

> "When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to *redact the information that is exempt*. The public body *shall* make the remaining information available for inspection and copying." (Emphases added.) 5 ILCS 140/7(1) (West 2018).

¶ 46        In other words, when a FOIA request is made to a public body, it must redact exempted portions of the requested documents and give the remaining information over to the requestor. *Id.*; see also *Lucy Parsons Labs v. City of Chicago Mayor's Office*, 2021 IL App (1st) 192073, ¶ 19 ("[T]he public body's duty to redact the exempt information and produce the nonexempt information remains even where the redactions would leave the requestor with nothing useful."); *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780, ¶ 39, 156 N.E.3d 480 (holding that law enforcement bodies must redact exempt matters and disclose the rest). A plain reading of this provision in the statute and the case law clearly shows that the redaction of exempt portions of documents is not only possible but required.

¶ 47        The FOIA also requires the following:

> "When a request for public records is denied on the grounds that the records are exempt under Section 7 of this Act, the notice of denial shall specify the exemption

- 11 -

claimed to authorize the denial and the specific reasons for the denial, *including a detailed factual basis* and a citation to supporting legal authority." (Emphasis added.) 5 ILCS 140/9(b) (West 2018).

¶ 48        DOC's providing these details might have allowed for "adequate adversarial testing" of any claimed exemptions in the trial court. *Peoria Journal Star v. City of Peoria*, 2016 IL App (3d) 140838, ¶ 12, 52 N.E.3d 711. However, in the present case, DOC relied on section 7(1)(a) to withhold the Lippert complaint in its entirety but did not provide "a detailed factual basis," let alone any explanation at all, for why it chose not to redact the exempted information and provide Staake with the redacted complaint. We note again the contrast between the lack of evidence in this case explaining DOC's actions regarding Staake's FOIA request as compared to the evidence before the trial court in *Rock River Times*.

¶ 49        Second, although DOC is correct that its reassessment of its original interpretation of the exemptions, by itself, is not enough to demonstrate bad faith, the fact that it did so only after Staake filed a lawsuit warrants some scrutiny. That scrutiny is not a penalty for DOC's continued consideration of the FOIA request but is simply a check to ensure that a public body does not have a practice of issuing boilerplate denials and granting requests only after litigation has commenced.

¶ 50        Third, the facts of this case are similar to those of *Rock River Times*, in which, as we noted earlier, the appellate court affirmed the trial court's finding of bad faith. *Rock River Times*, 2012 IL App (2d) 110879, ¶ 54. Here, similar to the school in *Rock River Times*, DOC asserted a different and new reason for why it would not disclose a requested document (the Lippert complaint) only after Staake correctly pointed out in his request for reconsideration that DOC could simply redact the document of any exempt information. Like in that case, here, too, an inference could be drawn that DOC recognized its mistake but, in wanting to "save face," chose

- 12 -

to provide a non-exemption-based reason to refuse Staake's request. Because of the lack of information in the record, we cannot determine what DOC's reasoning may have been.

¶ 51 Ultimately, we conclude that when viewing Staake's claim of bad faith in the light most favorable to him, questions of material fact remain that preclude summary judgment. For example: (1) Why did DOC withhold the Lippert complaint in its entirety instead of redacting it? (2) How did DOC come to the conclusion that the complaint was exempt from disclosure? (3) Who made that initial decision? (4) And, importantly, why did DOC state that Staake's request was not a proper "request for records" only after he (correctly) pointed out DOC could redact the complaint?

¶ 52 Accordingly, the trial court erred in granting summary judgment in favor of DOC regarding the Lippert complaint.

¶ 53 b. The Educational Documents

¶ 54 Next, DOC argues that its decision to withhold the educational documents was not in bad faith because it reasonably believed that the items were contained in Staake's master file and, accordingly, were exempt from disclosure under section 7(1)(a) because (1) section 3-5-1(b) of the Unified Code of Corrections provided that an inmate's master files were confidential and (2) section 3-5-1(a)(13) exempted from release any "other information that the respective Department determines is relevant to the secure confinement and rehabilitation of" an inmate. 730 ILCS 5/3-5-1(a)(13), (b) (West 2018). DOC also argues that, had Staake asked for reconsideration, DOC could have reviewed its denial prior to litigation.

¶ 55 Whether the trial court erred by granting summary judgment in favor of DOC regarding the educational documents is a closer question. However, DOC's failure to provide a detailed factual basis to Staake as required by section 9(b) of the FOIA makes it impossible, on

this record, to determine whether DOC acted in bad faith by withholding the documents. As we stated earlier, a mid-litigation disclosure, which in itself is insufficient to show bad faith, nonetheless invites scrutiny of DOC's original decisions.

¶ 56        We conclude that genuine issues of material fact remain regarding whether DOC acted in bad faith when it denied Staake's request for the educational documents and the trial court erred by granting summary judgment with respect to those documents.

¶ 57                    2. *Attorney Fees and Costs*

¶ 58        Because we reverse and remand for further proceedings on whether DOC acted in bad faith, we need not address the parties' arguments about attorney fees and costs. The trial court may consider those issues on remand.

¶ 59                    III. CONCLUSION

¶ 60        For the reasons stated, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶ 61        Affirmed in part and reversed in part.

¶ 62        Cause remanded.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 18-MR-710; the Hon. Rudolph M. Braud Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Jared M. Staake, of Beardstown, appellant *pro se*. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Benjamin F. Jacobson, Assistant Attorney General, of counsel), for appellee. |